FILED
SCRANTON
OCT 31 2016
Per _____ AMD _____
DEPUTY CLERK

Friday, October 28, 2016
Ahmad Diri
Docket No.: 3:CR-12-294-02

To Honorable Judge Robert Mariani,

Please be advised this letter is to apprise you that I intend to file a motion for reconsideration of the court's sentence pronounced upon me as soon as possible.

My lawyer, Mr. William Ruzzo, has been notified of these requests. The reason why I am asking for a recons is because I feel that there was a misunderstanding about my participation in this case. I believe that sentence was based upon an incorrect statement in my PSI report. I am referring to Item #6 which states that I operate the company that conducted exports. That is a totally false statement because I do not operate nor work for this company. This issue has been explained to my lawyer in the past to be corrected. Also, I have included a document that explains the argument towards the enhancement issue which, to my belief, I presented inadequately. I was never given a chance to hand to you my Supplemental Sentencing Memorandum which I have enclosed. Please take the time to read over the documents I have sent to you. I appreciate your time and consideration in this matter.

With Respect,
Ahmad Diri

My brother does not want to talk to the federal agents. I have persuaded my brother to do so to help me in my case so I can get less time in prison which I have been promised by the federal agents, the District Attorney and my lawyer. My brother risked his life and my family to help me by talking to the federal agents. Meanwhile, the Syrian government is recording all international calls which puts my family in serious danger. I have explained to the federal agents many times my brother has been interrogated by the Syrian Secret Service which confiscated four passports belonging to my family. This was the result after ICE posted my indictment online and the District Attorney commented on it. I have informed the federal agents to be careful as to how they talk to my brother. In the last meeting I had with the federal agents, they called my brother and told him on the phone, "Are you going to cooperate?" Immediately I told the federal agents, "You cannot say that on the phone." The federal agent waved his hand at me and said, "Do not worry about it, he will be alright." I am worried about my mother and the rest of my family because the international calls are constantly being recorded. There is no mercy in a communist country such as Syria. These people against me can care less about what happens to my family as long as they have their case complete. To them, it does not matter how many lives are lost in the process. But I care about the welfare of my family. Also, the frustration from this case and being in prison for ten months without knowing any possible outcome is causing a lot of stress. My manager is holding my employee position while awaiting return. Not to mention, the company is sttruggling with lack of engineers. The job is the only means I have of support because I am the sole caretaker of my family. All this pressure lead me to call my brother and alert him to stop talking to the federal agents, until my case is over. The real question is whether there is any conscientious human being out there who will want to sacrifice the one life of his entire family in order to save his own? The answer, as I believe, will be 'NO' for everyone with a good moral character and a clear conscience mind. Nevertheless, I agreed to cooperate with the federal agents based on my court appointed Attorney's advice with my naive understanding that they will not compromise or endanger the safety of my family who are unfortunately stocked in an area well guarded by the Syrian government. To the contrary, I was surprised to learn that the federal agents have posted my indictment online, found in the ICE website, and made comments on it which are very damaging and potentially harmful to my family's welfare in Syria. During one of my meetings with the federal agents in the presence of my attorney, I asked and begged them to remove the inictment and the comments from the online ICE websites for the sake of my family's safety in the hands of the Syrian government. The federal agents, and ICE, told me they cannot do that and that 'We do not have a closed court session like in United Knogdom'. Also, that it is in the public interest to know about the case. One of the agents surprisingly said, "In fact, I am going to tell the press about your case." While I was shocked looking at everyone's faces including my public attorney, the two federal agents, and the District Attorney were all present and no one made any comment in response to that agent's threat to report my case to the press. A minutes later during that same meeting, the same federal agent renewed his threat saying, "I will tell the press if they asked about your case." Currently not just my brother, but my entire family in Syria is under permanent surveillance by the Syrian government just in case any of them would like to make any move to the neighboring countries. All of these unfortunate troubles are due to the federal agents' mishandling of the case whereas they intentionally jeopardize my entire family's life by expressly asking my brother during the phonecalls to him in Syria whether he 'wants to cooperate' and, if so, to 'travel to Lebanon' so that they can pick him up over there. Although I had previously advised the agents to be careful in the way they talk with my brother on these international phonelines. In light of all these facts, how could the federal agents conscientiously say that I am obstructing justice by telling my brother to stop talking with me on the phone when all I am trying to prevent is giving a reason for the barbaric and ruthless Syrian government to murder my family. Unfortunately, thanks to the U.S. federal agents, failure to yield for my family's safety in while dealing with my brother in such a reckless manner as they should have known better. I pray that the federal court and/or any other agency having authority to look into this matter will give a thorough consideration to all of the above mentioned facts prior to the determination of whether or not I had obstructed justice as alleged by the federal agents. Thank you for your time and consideration.

### Supplemental Sentencing Memorandum

Comparison of case law or Federal courts precedents vis.a.vis (in relation to or with regard to) to the instant matter presently before this Honorable Court. The following are U.S. Federal court precedents in which the alleged criminal conduct of the co-defendants were much more egregious than the government's charges brought against Mr. Diri, yet those defendants were sentenced to much lesser prison time than I have already served since the beginning of my case.

In United States v. Groos, 2008 U.S. Dist. Lexis 48805 (N.D. Ill., 2008), Mr. Groos (the defendant) entered a plea of guilty charges brought under the International Emergency Economic Powers Act, 50 U.S.C.S. § 1701-06, the Iranian Transactions Regulations, 31 C.F.R. § 560, and the Export Administration Regulations, 31 C.F.R. § 730-74. The defendant moved for reconsideration and to impose house arrest in lieu of incarceration. The case implicated U.S. Sentencing Guidelines Manual § § 2M5.1., 5K2.20 and 18 U.S.C.S. § 3553 (a). Defendant pleaded guilty to violations of 50 U.S.C.S. § 1701 and 50 U.S.C.S. app. § 2401 for shipping fire suppression sprinklers to Iran, a country under embargo.

Despite the fact that the defendant had shipped the fire suppression sprinklers to Iran without a license and full knowledge that it was illegal because of a U.S. trade embargo, the sentencing Judge said, "Nevertheless, there was no evidence that defendant's intent or effect was to subvert national security." The Judge then concluded, that some jail time, however minimal, was necessary to effectuate the goals of sentencing. As a result, defendant was sentenced to a term of imprisonment of sixty days to be followed by a one-year term of supervised release, as well as a monetary fine.

The Sentencing Guidelines Manual § 2M5.1. recognizes that a sentencing court should consider the characteristics of the offense and provides that: In determining the sentence within the applicable U.S. Sentencing Guidelines range, the court may consider the degree to which the violation threatens a security interest of the United States, the volume of commerce involved, the extent of planning or sophistication, and [*] are present in an extreme form, *a departure from the U.S. Sentencing Guidelines may be warranted.* (U.S. Sentencing Guidelines Manual § 2M5.1). Moreover, Section 5K2.20 applies in an exceptional case only if the defendant has committed a single criminal occurrence or single transaction that (1) is committed without significant planning; (2) is of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life. (See U.S Sentencing Guidelines Manual § 5K2.20 (b)).

Here, as outlined in the background of Mr. Groos case by Honorable Gottschall's opinion, the facts surrounding Mr. Groos are far more egregious than the ones in Mr. Diri's case. For instance, Mr. Groos was the president of Luxembourg-based Viking S. A. which is the international division of The Viking Corporation, a U.S. company based in Hastings, Michigan that distributes fire suppression equipment. Viking S.A. had at least one outstanding order for fire sprinkler equipment from an Iranian company with which it had been doing business for some years. On or around December 11, 2001, Mr. Groos learned from colleagues that shipping the ordered goods to Iran without a license was illegal because of the U.S. trade embargo. Nevertheless, Groos and his colleagues took steps to complete the order, for their Iranian customer. This was accomplished by shipping the goods from the Viking U.S. Michigan warehouse, to an intermediary in the United Arab Emirates (U.A.E.) who would forward the goods to Iran. Mr. Groos made the decision even though he knew that the ultimate destination of the goods was Iran, that pursuant to the embargo a license was required for such an export, and that a competitor of Viking's had been caught conducting a similar business transaction to Iran and fined $10,000 by the U.S. Department of Commerce.

In contrast to Mr. Groos's obvious criminal conduct whereas he actually knew the specific law which he was violating as he was briefed by his colleagues but never-the -less ignored their concerns and proceeded to accomplish the known illegal transaction, Mr. Diri is otherwise a proud law-abiding citizen of the United Kingdom who mainly unknowingly and unintentionally had translated some emails from the english language to the arabic language as he was asked by his brother who together with other people were engaged in buying non lethal or harmless products from their American business counterpart. Mr. Diri who lived and worked in London, England as a catering engineer, has not invested any money in the said illegal transaction(s) and certainly did not receive any payment from neither his brother or any gift from the American counterpart for helping his brother understand email messages being sent by the

[*] — whether there are multiple occurrences. Where such factors

-1-

American counterpart - the seller of the merchandise from within the borders of America. Unfortunately, Mr. Diri has suffered near total irreversable harm such as the divorce from his lovely wife, the loss of his employment in London, England; the potential permanent damage to his good reputation upon return to London, England; the instant and real possibility of losing his mother who is currently in a very poor health condition as this case had failed him to fulfill his promise made to his mother which was to bring her to London, England for the purpose of receiving adequate health care and medical treatment for her deteriorating heart condition; more severely, Mr. Diri has been and continued to be incarcerated in arguably one of the worst county prisons (LCP) ever since the begining of this case, while the real actors of this business including the American counterpart - the seller of the merchandise - and Mr. Diri's brother and others all retained their freedom and liberties.

In sum, it is fair to say that in light of Groos' case and many other federal court precedents as this sentenceing Court will come to know, the interest of justice requires that this Honorable Court use its judicial discretional power to sentence Mr. Diri to time served with no further penalty. Additionally, Mr. Diri respectfully asks the Court to issue a memorandum ordering the government agents to expedite his safe return to London, England since he has valid U.K. Passport of which federal authorities are in possession off.

Thank you very much in advance and may God bless you.

Respectfully Submitted:

Ahmed Diri

Date: October, 23, 2016

cc. Defendant
Attorney
Judge

-2-

October, 22, 2016
Reference: U.S.A. vs. Ahmad Diri
Docket No.: 3:CR-12-294-02

To whom it may concern,
My name is Ahmad Diri. I was born in Syria and moved to London, England in the year 2000. While living in London, England, I met my wife who is from Australia. We got married in the year 2002. I love London and I fit in very well with out any difficulties. I have learned a lot from that great nation to which I am proud to be a citizen, and I also respect it very well especially the way it treats its citizens. I last visited my family in Syria in the year 2012 before the war started, when my father passed away.

My story goes as follows:
My naive and innocent involvement in this unfortunate case arised when my brother had asked me to translate some emails he was receiving from a business man who lived in the United States of America. My brother woked together with other people in importing and/or exporting products, general construction jobs, and renovating homes. As a man who was blessed with a limited understanding of the English language, I proceeded to translate the emails for my brother from time to time without any knowledge that this was a crime against the United States Of America. The emails consisted of product pricing, discount information, and delivery time of items. As a proud citizen of the United Kingdom, I had a good job as a catering engineer. In march of 2013, I arrived home from work only to find the police presenting me with a warrant issued by the U.S. federal agents to be extradited to the United States. As a result, I spent the night in jail for the first time in my life and the next day I bailed out. At that time, I was under alot of pressure and was experiencing severe anxiety due to theconstant worry for my family who lived in the war torn zone in my native country. I would call my family several times daily and check on them to see how they were doing. Sometimes while I would talk on the phone with my family, I can hear loud explosions and non stop gun shots in the background. It feels like you are actually there. It drives me crazy to know what is happening and the real danger my family is facing and for me not being able to potect or assist them in any helpful way. On the other side, the U.S. government had me on criminal charges of conspiracy to import and export products without a license. What happened to me from that standing point is a horrible experience which I would never wish to even my worst enemy. After two years and seven months, I had lost my fight against the U.S. extradition in the high court of England. The Scotland Yard police officers then told me they were going to book a date to meet with the U.S. federal agents at the London airport. I was told to go and fight my case in the U.S. soils without any assistance from anyone whatsoever and I do not have any relative or friend in the U.S. where I also have never set foot on before. As a result of this unfortunate drama, I had no choice but to resign from my job and divorce my wife since my date of return back to the United Kingdom was and remains uncertain. Once at the London Airport, I met the U.S. federal agents who then flew me to America and threw me in one of their worst prisons (Lackawana County Prison) with a special order to the prison administration to classify me as a dangerous inmate. There after, I was issued a pink jumpsuit and thrown in the super max unit for six straight months. What happened to me next and continued to happen currently is as follows:

- 1 -

FACTS:

- This situation I found myself in had costed me a divorce from my wife since we did not know what was going to happen in the future to me or how long it will take for me to see her again. She was getting old, we had no children together, and we wanted to have children. This was a goal which we, then at the time, planned to achieve together.
- Several times the federal agents would make a joke saying,"I should make a tattoo of 'ISIS' on my arm", to scare off the inmates. I am from Syrian ethnicity which is why I believe they think they can humiliate me. This federal case is in no way at all a laughing matter. I feel insulted like they can do anything about it.
- I have been placed in the super Max section of the prison for six months. The prison guards and the federal agents would call me 'ISIS'. I am fearful for the safety of my life and still today I experience severe mental trauma, serious anxiety, and unable to sleep at night. When I was in the super Max unit, it was mental torture to see the guards beat up, spray with tear gas, and sometimes curse at other inmates.
- They let me go to the yeard outside only seven times within the six months for forty-five minutes of recreation. While outside, I am placed in a cage with shackles on my legs that would cut my skin. I felt like I was a dangerous animal. This part of the prison is used to house the most violent criminals in order to break you down physically and mentally. I am not such a bad person at all for me to deserve that type of punishment. At the present time, I am housed in the general population of the prison.
- Once I was brought back from the interrogation room and dropped off by the federal agents at the prison, three prison guards stripped me naked. I tried to move away from the cameras and the officers would start to make a joke abut me saying, "Do not scare the camera, Alah-Akper, Alah-Akper." I felt very humiliated and I remained in constant fear for my life.
- I have been used as a leverage by the federal agents. Either my brother commits a crime by running away from Syria or I face more than five years in a United States prison. The Syrian government told my brother not to leave the conuntry until further notice. If he decides to leave the county my family could be murdered.
- If the federal agents have problems with the Syrian government, this is not our fault. We, and my family,
still have to respect the law of the country they live in. That is to say that my family must abide by the Syrian government law and order. Therefore, the continuous attempt by the U.S. Federal agents to convince my brother to travel to the Lebanese territory so that they could pick him up and bring him to the U.S. is clearly a very reckless and dangerous move.

Respectfully Submitted

Ahmad Diri

FOREVER / USA

LEHIGH VALLEY PA 180
29 OCT 2016 PM 3 L

Honorable Judge
Robert Mariani
235 N. Washington Avenue

Scranton, PA 18503

18503-151299

Name: Ahmad Diri
Lackawanna County Prison
1371 N Washington Avenue
Scranton, PA 18509-2840

RECEIVED
SCRANTON
OCT 31 2016
PER _____ DEPUTY CLERK

CONTENTS MAILED FROM
A CORRECTIONAL FACILITY